NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

RECEIVED

SEP 11 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

LINDA DEAN,

      Plaintiff,

    v.

NEW ENGLAND LIFE INSURANCE
COMPANY a.k.a. NEW ENGLAND
FINANCIAL, A METLIFE COMPANY,
NEW ENGLAND MUTUAL LIFE
INSURANCE COMPANY,
METROPOLITAN LIFE INSURANCE
COMPANY trading as METLIFE, ABC
CORPS I-X, JOHN DOES, I-XX,

      Defendants.

Civ. No. 15-6336

**OPINION**

METROPOLITAN LIFE INSURANCE
COMPANY,

      Third Party Plaintiff,

    v.

ASHLEY SMALLING and SYDNEE
SMALLING,

      Third Party Defendants.

THOMPSON, U.S.D.J.

    This matter comes before the Court upon the motion by Defendants New England Life

Insurance Company and Metropolitan Life Insurance Company ("MetLife")[1] for Summary

---

[1] MetLife is also a Third Party Plaintiff in this action, having brought a claim against Third Party
Defendants Ashley and Sydnee Smalling.

Judgment. (ECF No. 19.) Plaintiff Linda Dean ("Plaintiff") opposed and filed a Cross Motion for Summary Judgment on Count One. (ECF No. 24.) MetLife, New England Life Insurance Company, and New England Mutual Life Insurance Company (collectively "Defendants") replied and opposed. (ECF No. 25.) The Court will decide these motions based upon the written submissions and without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' Motion for Summary Judgment will be granted and Plaintiff's Cross Motion for Summary Judgment will be denied.

## BACKGROUND

This controversy arises out of the payment of a life insurance policy by Defendants to Third Party Defendants. Plaintiff argues that Defendants should have paid the life insurance proceeds to Plaintiff.

The uncontroverted facts are as follows: In June of 1991, Raymond Smalling (the "Decedent") obtained an individual life insurance policy listing Plaintiff, his spouse at the time, as the beneficiary. (Defs.' Undisputed Statement of Material Facts ("SOF") ¶ 1, ECF No 19-2.) The Decedent died on July 16, 2013. (*Id.*) The beneficiary designation remained unchanged until that time. (*Id.*)

Between July 22 and July 30, 2013, Plaintiff, Mary Brenner (the Decedent's sister), and Ashley and Sydnee Smalling (Decedent's children) notified Defendants of the Decedent's death. (*Id.* ¶¶ 2–6.) Ms. Brenner and Ashley and Sydnee Smalling indicated that Plaintiff and the Decedent had divorced and provided Defendants with the Judgment of Divorce and Property and Separation Agreement between Plaintiff and Decedent. (*Id.* ¶¶ 5–6.) In their communications and those documents, Ms. Brenner and Ashley and Sydnee Smalling argued that Plaintiff was no longer the beneficiary and Ashley and Sydnee were the new beneficiaries. (*Id.*) They argued

2

that Ashley and Sydnee were to receive the insurance benefits once they reached the age of majority. (*Id.*) Ashley and Sydnee stated that they had reached the age of majority and therefore requested that the policy proceeds be issued directly to them. (*Id.* ¶ 6.) They further stated to Defendants, "Our mother has since my fathers [sic] death 'disowned' us." (*Id.*)

On August 2, 2013, Plaintiff called Defendants and told them, inter alia, that the Decedent was required to maintain a life insurance policy for their children, per the Judgement of Divorce, and the policy in question was the only one she knew of. (*Id.* ¶ 7.)[2] On August 5, Plaintiff again called Defendants and changed her statement to say she believed she was the beneficiary of the policy. (*Id.* ¶ 9.)

On August 5, 2013, Defendants contacted Ashley and Sydnee to request signed Claimant's Statements and an original certified copy of the Decedent's death certificate. (*Id.* ¶ 10.) Ashley and Sydnee provided the requested documents on August 8, 2013. (*Id.* ¶ 11.) Based on the provisions of the Judgment of Divorce and the Property Settlement agreement, Ashley and Sydnee's signed documents, and the death certificate, on August 13, 2013, Defendants issued a check each to Ashley and Sydnee Smalling, each for fifty percent of the policy proceeds. (*Id.* ¶ 12.) At the time the proceeds were paid, it is undisputed that Ashley had turned eighteen three years prior in 2010 and Sydnee had turned eighteen the year prior in 2012. (*Id.* ¶¶ 20, 22.)

Plaintiff and the Decedent had a Judgment of Divorce dated May 17, 2006, which incorporated and attached their Property Settlement Agreement ("PSA") dated September 6,

---

[2] In her statement of undisputed facts that accompanies her cross motion for summary judgment, "Plaintiff objects to Paragraph 7, in that it is not complete as to all the items of all of the things Plaintiff advised MetLife." (ECF No. 24-2, at 11.) This does not dispute the contents of Paragraph 7; therefore, the Court treats it as undisputed with the caveat of incompleteness.

2001. (*Id.* ¶ 15.) The PSA stated, "The [Decedent] shall maintain and pay the premium for insurance coverage in the amount of Seventy Five Thousand ($75,000.00) Dollars naming the children as equal beneficiaries and naming the Wife trustee until the children are emancipated."[3] (*Id.* ¶ 17, citing PSA Article VI.) It also stated in a separate article, "The child support shall be equally allocated until emancipation as defined by statute and case law." (*Id.*, citing PSA Article III.) Plaintiff and the Decedent also executed a Custody and Visitation Agreement ("CVA") more than a year later on March 3, 2003. (*Id.* ¶ 16.) The CVA is not mentioned in or attached to the Judgment of Divorce. (*Id.*) The CVA contained a specific definition of emancipation that depended on the happening of certain events in Ashley and Sydnee's lives. (*Id.* ¶ 18, citing CVA Section 2.8.)

On March 7, 2014, Plaintiff filed a complaint in New Jersey Superior Court (*Dean I*)[4] arguing that the same Defendants should have paid her the policy proceeds, as the listed beneficiary or as trustee for her unemancipated children under the PSA provision and CVA definition. That case was removed to federal court and dismissed by this Court on January 29, 2015 for failure to state a claim.

On July 31, 2015, Plaintiff filed the Complaint in this action (*Dean II*) in New Jersey Superior Court. Defendants removed to this Court on August 21, 2015. Plaintiff again argued that under the CVA's definition of "emancipation," neither Ashley nor Sydnee was emancipated, and, therefore, the policy proceeds should have been paid to Plaintiff as their trustee. (ECF No. 1-2.) Plaintiff filed a five-count Complaint alleging: (1) breach of contract, (2) breach of implied

---

[3] Plaintiff seeks not only the actual damages in the amount of the policy proceeds, but also compensatory and punitive damages, which raises the amount in controversy above the required jurisdictional amount for federal diversity jurisdiction under 28 U.S.C. § 1332.
[4] *Dean v. New England Mut. Life Ins. Co.*, 2015 WL 404743 (D.N.J. June 21, 2015).

covenant of good faith and fair dealing, (3) misrepresentation and/or omission, (4) negligence, and (5) consumer fraud.

Defendants moved for summary judgment on all counts. (ECF No. 19.) Plaintiff opposed and filed a cross motion for partial summary judgment. (ECF No. 24.) These motions are presently before the Court.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ANALYSIS

### I.    Defendants' Motion for Summary Judgment

#### A.  N.J.S.A. 17B:24-5 and Good Faith Action

Defendants first argue that they should be granted summary judgment on all counts because Plaintiff has alleged no facts that Defendants' payment was not made in good faith, and under New Jersey law, a good faith payment by a life insurer in accordance with the terms of the policy or contract fully discharges any claims against the insurer.

New Jersey law states,

> Whenever the proceeds of or payments under a life or health insurance policy or annuity contract heretofore or hereafter issued become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, payment thereof by the insurer in accordance therewith or in accordance with any written assignment thereof shall fully discharge the insurer from all claims under the policy or contract.

N.J.S.A. 17B:24-5.[5] Together, subsequent case law and this statute provide three payment possibilities by which the insurer is absolved of all obligation and presumed to have acted in good faith. First, this provision "fully protects the insurer when it pays the policy proceeds to the named beneficiary." *Vasconi v. Guardian Life Ins. Co. of Am.*, 590 A.2d 1161, 1167 (N.J. 1991). Second, the payment is valid when in accord with the exercise of a right or privilege within the policy or, third, with an assignment under the policy. *See* N.J.S.A. 17B:24-5. As the New Jersey Supreme Court has explained, this good faith statute is designed to fully insulate insurers: "In the event of a post-payment dispute, the insurer will simply not be involved,

---

[5] This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1332, diversity jurisdiction. Therefore, it properly applies the law of the state in which it sits, New Jersey.

having properly executed [their] duty under the policy to pay the named beneficiary." *Vasconi*, 590 A.2d at 1167.

An effective change of beneficiary under an insurance policy requires "'substantial compliance' with the method prescribed in the policy to change the beneficiary," such that the insured makes every reasonable effort to effectuate the change. *Fox v. Lincoln Fin. Grp.*, 109 A.3d 221, 225 (N.J. Super. 2015). New Jersey law recognizes a limited exception to this requirement when spouses enter into a divorce decree and execute a property settlement agreement that purports to fully distribute and settle all questions related to marital assets—in such circumstances that agreement controls. *See Fox*, 109 A.3d at 225–26 (citing *Vasconi*, 590 A.2d at 1166 ("A beneficiary designation must yield to the provisions of a separation agreement expressing an intent contrary to the policy provision.")).

Defendants argue that they paid out the Decedent's policy to Ashley and Sydnee—who are the named beneficiaries according to the Judgment of Divorce—based on the documentation the daughters provided to them. Plaintiff argues that the policy was not executed in accordance with its terms, and even accepting the effect of the Judgment of Divorce and PSA, the benefit should have been paid to Plaintiff as trustee until Sydnee and Ashley's emancipation. (Pl.'s Cross Motion Summ. J. at 18–19, ECF No. 24-1.)

It is undisputed that the terms of the contract designated Plaintiff as the only beneficiary. (Defs.' SOF ¶ 1, ECF No 19-2). It is also undisputed that Plaintiff was no longer the beneficiary following her divorce from the Decedent. (*Id.* ¶ 17; Pl.'s SOF ¶ 10, ECF No. 24-2). The policy provides the Owner with the right or privilege to change the owner or beneficiary of the policy: "A change of Owner or Beneficiary must be written form satisfactory to the Company, and must be dated and signed by the Owner who is making the change." (Life Policy, Section 11: Owner

7

and Beneficiary, Ex. A, ECF No. 19-4.)[6] The PSA states in Article VI, Life Insurance, "The

Husband shall maintain and pay the premium for insurance coverage in the amount of Seventy

Five Thousand ($75,000.00) dollars naming the children as equal beneficiaries and naming the

Wife as trustee until the children are emancipated." (Kurtz Decl., Ex. H, ECF No. 19-4.) The

parties do not dispute that this insurance policy is the one referenced by the Judgment of Divorce

and PSA and the one at issue in this case. (*See* Defs.' SOF ¶ 14; Pl.'s SOF ¶¶ 15–16.) The PSA

that designated Ashley and Sydnee as beneficiaries was a written document, dated and signed by

the Decedent, who was both the Owner and Insured party to the Life Policy, and fully and

explicitly incorporated into the Judgment of Divorce. (*See* Judgment of Divorce, Kurtz Decl.,

Ex. G, ECF No. 19-4; PSA, Kurtz Decl., Ex. H.) Defendants paid Ashley and Sydnee directly on

the basis that the Judgment of Divorce named the daughters as beneficiaries,[7] and that both

daughters had passed the age of 18 and were presumptively emancipated under New Jersey law.[8]

(Defs.' Br. at 11, Defs.' SOF ¶¶ 6, 7, 9, 15, 20, 22.) It is undisputed that Defendants had no

knowledge of the CVA and its alternative definition of emancipation prior to payment. (Defs.'

---

[6] The Court notes that the present situation does not meet the requirements of a valid assignment under the Policy. The Policy expressly provided for absolute assignments (change of Owner and Beneficiary) and collateral assignments (change of neither), and the terms of the policy require a signed copy of an assignment form be received by the insurance company, which did not happen in this case. (Life Policy, Section 11: Owner and Beneficiary, ECF No. 19-4, Ex. A).
[7] It appears that the Judgment of Divorce and PSA required the Insured, i.e. the Decedent, to maintain a life insurance policy in the amount of $75,000.00 with Ashley and Sydnee as beneficiaries and Plaintiff as trustee until their emancipation. The Judgment of Divorce and PSA do not name this policy specifically nor were Defendants aware of the divorce, Judgment of Divorce, or PSA prior to the death of the Insured. Plaintiff alleged that this was the only life insurance policy the Insured had, so the Judgment of Divorce and PSA must apply. Defendants do not dispute that.
[8] Pursuant to N.J.S.A. 9:17B-3, "[a]ttainment of age 18 establishes prima facie, but not conclusive, proof of emancipation." *Newburgh v. Arrigo*, 443 A.2d 1031, 1037 (N.J. 1982). It is undisputed that at the time the proceeds were paid in 2013, Ashley had turned eighteen three years prior and Sydnee had turned eighteen the year prior. (*Id.* ¶¶ 20, 22.)

8

SOF ¶¶ 15, 16.) Therefore, it appears that this change of beneficiary was satisfactory to the

Company (Defendants) and could be an exercise of a right or privilege under the policy to satisfy

N.J.S.A. 17B:24-5.

However, construing these facts in the light most favorable to the non-moving party,

Decedent's actions may not have met the policy terms to qualify as an exercise of a right or

privilege under the policy. The policy references, though does not explicitly require, that the

written form of change should be received by the Company. (Life Policy, Section 11: Owner

and Beneficiary, Ex. A, ECF No. 19-4.) The Judgment of Divorce and PSA were not provided to

Defendants when the change was made or prior to Decedent's death; rather, Defendants learned

of this information from Ms. Brenner, Ashley, Sydnee, and Plaintiff collectively. (Defs.' SOF

¶¶ 1–7.) Therefore, the Court will also examine the effect of the PSA on the policy by operation

of law, not simply the policy's terms. It is undisputed that the PSA was executed pursuant to the

Judgment of Divorce between Plaintiff and Decedent. (Defs. SOF ¶ 15.) The PSA also provided

for a mutual release and waiver of rights to each ex-spouse's property following the execution of

the agreement and purported to be a "resolution of *all* issues dividing the parties." (Kurtz Decl.,

Ex. H.) (emphasis added); *see Fox*, 109 A.3d at 225. Therefore, although the Decedent did not

inform Defendant of the change and was not necessarily in compliance with the terms of the

policy, the effect of a PSA under NJ law that disposes of and settles all issues of marital assets is

clear. By operation of law, the PSA expressly substituted Ashley and Sydnee as named

beneficiaries, with the proceeds payable to Plaintiff as trustee until their emancipation. Once

again, Defendants paid Ashley and Sydnee as new beneficiaries on the belief and understanding

that they were emancipated at the time.

9

Because New Jersey law creates a presumption that the insurer acted in good faith, Defendants are discharged of all subsequent liability based on Defendants' conduct here by issuing the proceeds to the changed beneficiaries under a privilege or right of the policy, or in the alternative, to the named beneficiaries by operation of law. *See* N.J.S.A. 17B:24-5. The Court will consider each claim and its viability in light of this provision.

B. Counts I and II: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants argue that summary judgment should be entered in their favor on Counts One and Two under the good faith provision, or in the alternative because there was no valid contract between Plaintiff and Defendants, and therefore no basis for the contract claims presented in Counts One and Two. (Defs.' Br. at 12–13, 15–16.) Plaintiff argues that Defendants had "a contractual obligation to pay someone, which is Linda Dean as trustee . . . ." (Pl.'s Br. at 14, ECF No. 24-1.) She appears to base her contract claims on the obligations described in the Judgment of Divorce, the PSA, and the CVA. (*See id.* at 14–17). She does not base her claims on the life insurance policy itself or her former status as named beneficiary.[9] (*Id.*)

In this case, Plaintiff argues in Count One that Defendants breached the terms of the contract by paying Ashley and Sydnee when they were not emancipated, rather than Plaintiff as trustee. In Count Two, she argues that that payment and process leading up to the payment was in bad faith and breached the implied covenant of good faith and fair dealing. Specifically, Plaintiff alleges that Defendants acted in bad faith, with improper motive in the payment of the

---

[9] If she did, she would not have a contract claim on this basis because it is undisputed that she was no longer the intended beneficiary, and therefore lacked standing based upon the contract. *See Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982) (a third party beneficiary with contractual standing to sue exists only where there is contractual intent to recognize a right to performance in the third person).

10

policy proceeds by failing to pay her as trustee pursuant to contractual obligations; Defendants

mishandled the claim and failed to pay the property, resulting in her own monetary damages.

(Compl. ¶¶ 40–42, ECF No. 1-2.) Plaintiff further alleges that "Defendant deliberately and with

ill motives and bad faith [sic], representations were made to Plaintiff and Plaintiff [sic] counsel

so as the Plaintiff would not pursue a claim or law suit against the defendant . . . ." (*Id.* ¶ 43.)

The key fact in dispute in the pleadings is whether Ashley and Sydnee were legally

emancipated, either pursuant to New Jersey law or the definition set forth in the CVA, at the time

Defendants issued the policy proceeds. In response to Plaintiff's contentions, Defendants claim

that they did not know about the existence of the CVA or its alternate definition of

"emancipation" until after Plaintiff filed her first lawsuit. (Defs.' Br. at 11–12 (referencing *Dean

I*)). It is undisputed that Ashley and Sydnee were named beneficiaries under the PSA. (Defs.'

SOF ¶ 17.) It is further undisputed that Defendant issued the proceeds under the presumption of

emancipation that attaches when an individual reaches 18 years of age. (Defs.' Br. at 11, Defs.'

SOF ¶¶ 6, 7, 9, 15, 20, 22.)

However, because the Court has found that N.J.S.A. 17B:24-5 is applicable to the present

suit, Defendant is discharged of all liability and absolved of involvement with post-payment

disputes. *Vasconi*, 590 A.2d at 1167. The parties' disagreement over the appropriate age of

emancipation presents such a post-payment dispute, which does not have bearing on the outcome

of this claim, nor is it essential to the cause of action. *Anderson*, 477 U.S. at 248.

Moreover, New Jersey's good faith statute limits the source of liability for insurers. In

*Hirsch v. Travelers Insurance Company*, 380 A.2d 715, 717 (N.J. Super. 1977), the New Jersey

Superior Court found that even where a property settlement agreement pursuant to a divorce

creates alternative obligations for insurance companies, "[i]n a direct action against the

11

companies . . . plaintiffs' claim must rest upon the responsibility of the insurers under the terms of their policies." Here, Defendants could arguably be liable under the Judgment of Divorce and PSA, although not parties to said contracts,[10] because they paid out the proceeds of the life insurance policy pursuant to their understanding of these documents, thereby incorporating those terms into the terms of the policy. Case law on N.J.S.A 17B:24-5, however, expressly precludes such contractual claims. It is already established that Defendants properly discharged their duties under the policy's terms by issuing proceeds to Ashley and Sydnee either as named beneficiaries by operation of law or substituted beneficiaries in exercise of a right under the policy. *Supra* Section I.A. Even though the PSA informed and altered Defendants' conduct, Plaintiff cannot sustain a claim against Defendants on the basis of these agreements.

On balance, summary judgment in favor of Defendants on both Counts I and II is appropriate.

### C. Count III: Misrepresentation and/or Omission

Defendants argue they should be granted summary judgment on Count Three of Plaintiff's Complaint. In Count Three, Plaintiff alleges that Defendants "misled and deceived" Plaintiff by representing that she was not entitled to payment of the proceeds in favor of Ashley and Sydnee and by misstating New Jersey law regarding emancipation "with the intention that Plaintiff rely on this representation and not pursue a claim against

---

[10] There must be a contract between the parties in order for a party to bring a breach of contract or breach of the implied covenant of good faith and fair dealing claim against the other. *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. Super. 2015) ("To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain damages."); *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 550–51 (D.N.J. 2012) (party must show a valid contract to bring a claim for breach of the implied covenant of good faith and fair dealing).

12

Defendants." (Compl. ¶¶ 46–47.) Further, Plaintiff alleges that Defendants "intended that the Plaintiff rely to her detriment on misrepresentation and/or omissions as described above, and not pursue any claim against the Defendants." (*Id.* ¶ 48.) Defendants argue that Plaintiff is unable to show any of the four elements of a negligent misrepresentation or omission claim. (Defs.' Br. at 17–18.)

For her misrepresentation or omission claim, Plaintiff would have to show at trial either the four elements of a negligent misrepresentation or omission claim or the additional element of malicious intent by Defendants for an intentional misrepresentation claim. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000). Plaintiff would have to show at trial: (1) that Defendants' statement was incorrect, (2) that it was negligently made, (3) that Plaintiff justifiably relied upon it, and (4) that she suffered economic loss or injury as a consequence. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011); *Kaufman*, 754 A.2d at 1195. The element of reliance is the same for both fraudulent or intentional misrepresentation and negligent misrepresentation claims. *Kaufman*, 754 A.2d at 1195.

In this case, there is no allegation that Plaintiff relied in any way upon Defendants' statements about Ashley and Sydnee's emancipation or the appropriate party to receive the insurance proceeds. To the contrary, Plaintiff alleges throughout her Complaint and motion brief that she continuously contested Defendants' position that Ashley and Sydnee were emancipated and the appropriate parties to receive the insurance proceeds. (Compl. ¶¶ 20, 23, 26–34; Pl.'s SOF ¶¶ 38, 42; *see also* Pl.'s Br. at 4–8). Therefore, Plaintiff has failed to establish the existence of facts that could satisfy the third element of this claim, which she would have to show at trial; the Court must grant summary judgment against her on Count Three. *Celotex*, 477 U.S. at 322.

13

D. Count IV: Negligence

Defendants argue they should be granted summary judgment on Count Four of Plaintiff's Complaint again based on the good faith provision, or in the alternative, Plaintiff's failure to show Defendants owed her a duty of care. In Count Four, Plaintiff alleges that Defendants owed Plaintiff "a duty of reasonable care in investigating whether or not indeed the children Ashley and Sydnee were in fact emancipated under the P.S.A. on [*sic*] such other documents concerning their emancipation that may exist, before making payment to the appropriate party" and "Defendants made no proper investigation of the laws of New Jersey pertaining to Ashley and Sydney's emancipation, or such investigation was negligently performed." (Compl. ¶¶ 52–53.)

Applying the same principle discussed above pursuant to Defendants' satisfaction of the policy under N.J.S.A. 17B:24-5, Defendants are absolved of liability resulting from post-payment disputes, *Vasconi*, 590 A.2d at 1167, and are only bound to the terms of their own policies, *Hirsch*, 380 A.2d at 717. Plaintiff's negligence claim once again rests on Ashley and Sydnee's emancipated status under the CVA. Plaintiff's negligence claim is both a post-payment dispute and a claim based on contracts other than Defendants' proprietary insurance policies. *See supra* Section I.B. It is undisputed that Defendants paid under their understanding of the terms of the Judgment of Divorce and PSA, based on evidence available to them at the time. (Defs.' SOF ¶ 14.) Because this payment is presumed to be in good faith under New Jersey law, *supra* Section I.A., Defendants are fully discharged of obligation on this type of claim. Therefore, there is no issue of material fact for the Court to consider and summary judgment on Count IV will be granted.

### E.  Count V: Consumer Fraud

Defendants seek summary judgment on Count Five, Plaintiff's claim of consumer fraud. In order to have standing to bring a claim under the Consumer Fraud Act, the plaintiff must be a consumer of a good from the defendant. *See, e.g.*, *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (finding plaintiff lacked standing where she did not purchase or use the complained of item herself because she could not establish an individualized injury in fact). In this case, Plaintiff was not the consumer; the Decedent was the consumer through his policy with Defendant. Therefore, Plaintiff does not have standing to bring a claim against Defendants for violation of the Consumer Fraud Act and Defendants must be granted summary judgment on this Count.

## II.  Plaintiff's Cross Motion for Summary Judgment

Plaintiff cross-moved for summary judgment on Count I, the Breach of Contract Claim. For the reasons stated in section I.B above, because N.J.S.A. 17B:24-5 applies, Defendants cannot be liable on Plaintiff's claims, and there is no issue of material fact for the Court to consider. Therefore, Plaintiff's cross motion must be denied.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Cross Motion for Summary Judgment will be denied. A corresponding order will follow.

Date:   9/11/17

_____
ANNE E. THOMPSON, U.S.D.J.

15